**TIFFANY AND COMPANY, Plaintiff,**

**v.**

**Milton VERRETT, et al., d/b/a Tiffany Estate Buyers, Defendants.**

**Civ. A. No. H–86–2511.**

United States District Court,
S.D. Texas,
Houston Division.

July 9, 1986.

Paul C. Van Slyke, Arnold, White & Durkee, Houston, Tex., for plaintiff.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMBINED PRELIMINARY AND PERMANENT INJUNCTION

McDONALD, District Judge.

Pending before the Court is Tiffany and Company's request for a preliminary and permanent injunction enjoining the Defendants (six John and Jane Doe(s) and XYZ Companies, doing business as Tiffany Estate Buyers)[1] from infringing upon Plaintiff's trademark under the Lanham Act and

---

**1.** At the trial on the merits, the testimony revealed that the persons actually served were Milton Verrett, individually and on behalf of

Tiffany Estate Buyers, Rich Gilbert, Richard Verrett, Louis Anthony Ashy, Laurie C. Henry and Gary M. Gibson.

request for damages. The Court combined the requests for the preliminary and permanent injunction for a trial on the merits pursuant to Federal Rule of Civil Procedure 65, and bifurcated the trial, reserving the issue of damages and attorney's fees. After reviewing the pleadings and the affidavits on file, listening to testimony, and hearing the argument of Plaintiff,[2] the Court concludes that a Permanent Injunction shall issue. Pursuant to Fed.R.Civ.P. 52(a), the Court issues the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. The Court has jurisdiction over the parties and the subject matter of this action pursuant to 15 U.S.C. §§ 1114(1), 1125(a) and 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

2. Plaintiff Tiffany and Company ("Tiffany") is a corporation incorporated under the laws of the State of New York, with its principal place of business at 727 Fifth Avenue, New York, New York. Plaintiff has a main store in New York City and seven branch stores in the United States. Two branch stores are in Texas: one in Houston and the other in Dallas.

3. The individual Defendants have names and residences as follows:

Milton Verrett
1400 W. Cardinal
Beaumont, Texas
Richard Verrett
195 7th Street
Beaumont, Texas
Laurie C. Henry
3143 Marianwood
Port Neches, Texas
Gary M. Gibson
3005 Lemontree
Plano, Texas

Louis Antony Ashy
3825 Austin
Beaumont, Texas
Richard Lee Gilbert
1837 Broadway
Beaumont, Texas

Although properly served, the Defendants failed to appear at the trial on the merits.

4. Defendant TIFFANY ESTATE BUYERS is an unincorporated business association carried on by the Defendants with a principal office at 1400 W. Cardinal, Beaumont, Texas. The name TIFFANY ESTATE BUYERS is an assumed name for a business owned by Defendant Richard Verrett according to Assumed Name Certificate No. 30,565 filed for record May 27, 1986 with the County Clerk of Jefferson County, Texas.

5. Plaintiff has for nearly one hundred-fifty years been engaged in the manufacture, sale, advertising and distribution of luxury goods of the highest quality, which now include, among other products, jewelry, watches, clocks, silverware, china, glassware, leather goods, writing instruments, and stationery. Among the jewelry Tiffany sells is diamond jewelry. Plaintiff is one of the most famous and well-respected manufacturers and merchants of such products in the United States. It has achieved a reputation for superlative quality both in the trade and among the public at large. One witness testified that Tiffany and Company is a "guild" jeweler—a jeweler of the highest quality and reputation in the Trade.

6. Plaintiff is the owner of the following valid and subsisting trademark and service mark registrations, among others, on the Principal Register in the United States Patent and Trademark Office:

---

**2.** All Defendants failed to appear for the injunction hearing. Defendant Milton Verrett, claiming to be president of 1st National Reserve, d/b/a/ Tiffany Estate Buyers, sent a letter to the court's chambers by messenger ten minutes before the proceedings were to commence. The letter merely stated Mr. Verrett's agreement to extend the temporary restraining order for another ten days. The Court does not view that letter as a motion of continuance. Although not obligated to accept the letter, the Court will make the letter a part of the record on file. Local Rules, United States District Court for the Southern District of Texas 14.

| MARK | REG. NOS. | DATE ISSUED | GOODS |
|------|-----------|-------------|-------|
| TIFFANY & CO. | 23,573 | September 5, 1883 | jewelry and watches |
| TIFFANY & CO. | 56,105 | August 21, 1906 | watches and clocks |
| TIFFANY & CO. | 58,872 | December 25, 1906 | jewelry |
| TIFFANY | 132,262 | June 15, 1920 | watches and clocks |
| TIFFANY | 133,063 | July 6, 1920 | jewelry |
| TIFFANY & CO. | 136,664 | November 2, 1920 | table cutlery, pocket knives |
| TIFFANY & CO. | 1,217,065 | November 16, 1982 | retail jewelry store services |
| TIFFANY | 1,228,409 | February 22, 1983 | decorative art objects of precious metals |
| TIFFANY | 1,251,355 | September 13, 1983 | retail store services |
| TIFFANY & CO. THE LIBERTY WATCH, T&CO. and Design | 1,334,211 | May 7, 1985 | watches |

7. All of the foregoing registrations are incontestable as provided in Section 15 of the Lanham Act, 15 U.S.C. § 1065, except for Nos. 1,217,065; 1,228,409; 1,251,355; and 1,334,211.

8. In its efforts to promote its products, Plaintiff has emphasized the quality of its products and the exclusivity of its designs. Almost exclusively, Tiffany jewelry, watches and other items are available only in Plaintiff's own Tiffany stores, and are advertised only in the most prestigious publications. As a result, Tiffany jewelry, watches and other products have been extremely popular among consumers of high-quality, elegant products.

9. Tiffany has an Estate Department and does appraise, buy, broker, and sell, discretely, estate jewelry if it is of exceptionally high quality, and Tiffany has advertised those services.

10. Plaintiff has spent substantial amounts of money in advertising and promoting its Tiffany trademark and trade name and products bearing that mark and name. In addition, the reputation of the mark has been enhanced by consumer recognition during a century and a half, and by reference to Plaintiff and its products, and by television broadcasts. The Tiffany mark has become universally known to the trade and the public as indicating products of the highest quality and workmanship.

11. By reason of the extensive sales, advertising, and promotion of products under the Tiffany trademark and trade name, and the public recognition of the extraordinarily high standards of products and services bearing the Tiffany trademark, service mark and name, the Tiffany trademark, service mark and trade name have come to symbolize enormously valuable goodwill of Plaintiff.

12. Defendants operate a business under the name Tiffany Estate Buyers. This business consists of buying "Jewelry, Diamonds, Gold & Silver Rings and Rare Coins" from consumers. The evidence shows that Defendants have no fixed place for doing business with the public. They operate, for brief periods of two or three days, in different cities from hotel rooms. For three days Defendants conducted business at the local Stouffer Hotel in Houston, Texas. They were preceded by an advertisement in The Houston Chronicle dated June 25, 1986 with an advertisement bearing the headline, "1 Million Dollars in CASH," and "Buying for 2 Days only PAYING CASH." They offered to buy jewelry that was "New, Used, Unclean or Worn Out—It doesn't Matter." They also of-

fered to buy "Dental Gold." Defendants also advertised "Free Appraisal." Defendants operated their business at the Stouffer Hotel on June 25, 26 and part of the day on June 27 until the Court issued its Temporary Restraining and it was served in this cause.

13. The name of Defendants' business—TIFFANY ESTATE BUYERS—appears in their advertisements in large and prominent letters printed in a type style similar to that in which Plaintiff's Tiffany mark is used and registered.

14. Defendants were aware of Plaintiff's long and extensive prior use of the Tiffany trademark and trade name, and of the fame of that mark.

15. The Defendants' business is so similar to Plaintiff's that the public will inevitably believe that Plaintiff and Defendant are the same entity and that Plaintiff purchases jewelry, diamonds, gold, silver and watches for sale in its stores through large-scale purchases such as those advertised by Defendants. The confusion is damaging to Plaintiff because the public is likely to believe, incorrectly, that Plaintiff is buying used, unclean, worn out and broken items, including "dental gold," and re-selling them in its stores at inflated prices.

16. There has been actual confusion as a consequence of the advertisement placed by Defendants in The Houston Chronicle on June 25, 1986. A number of consumers have telephoned the Tiffany store in Houston and inquired about the sponsorship or connection between "TIFFANY ESTATE BUYERS" as advertised and Plaintiff's business. One unnamed consumer, who phoned Tiffany's in Houston, became quite upset with Tiffany and claimed that Tiffany was misrepresenting the true facts by denying that it was connected with the Tiffany Estate Buyers' advertisement and denying its willingness to purchase his jewelry for cash.

### Conclusions of Law

1. This action was filed for violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

2. In trademark infringement suits, as in other cases, a party is entitled to injunctive relief upon a showing that (1) the plaintiff has prevailed on the merits; (2) that the plaintiff will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the plaintiff outweighs whatever damage the proposed injunction may cause the defendant; and (4) that the injunction, if issued, would not be adverse to the public interest. *Mitchell v. W.T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). The Court consolidated Plaintiff's request for a preliminary injunction with its request for a permanent injunction. Fed.R.Civ.P. 65. The Court finds that Defendants should be permanently enjoined from using Plaintiff's trademark, Tiffany, in their business.

3. Defendants' use of Plaintiff's registered Tiffany trademark and service mark is likely to cause confusion, mistake, or deception, and constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and in fact has caused confusion.

4. Defendants' use of Plaintiff's Tiffany trademark, service mark and trade name constitutes a false designation of origin, a false description of Defendants' business, goods and services, and a false representation that Defendant's business, goods and services are sponsored, endorsed, licensed, or authorized by, or affiliated or connected with, Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

5. Defendants have misappropriated the goodwill symbolized by the Tiffany mark and name and are engaging in common law unfair competition.

6. The evidence demonstrates a violation of Sections 32(1) and 43(a) of the Lanham Act.

7. A permanent injunction is granted enjoining all Defendants, their assigns and agents from using Plaintiff's registered trademark and service mark in the trade of jewelry purchases and sales.

8. The Court reserves the issue of damages and costs for a later proceeding.

9. To the extent that any of the Findings of Fact are also Conclusions of Law, they will be incorporated as such, and to the extent that any of the Conclusions of Law are also Findings of Fact they, likewise, will be incorporated therein.

10. The parties are directed to confer on the issue of damages, if any, and attorney's fees, if any. If no agreement can be reached within thirty (30) days, the Court will schedule a hearing to resolve those matters and thereafter enter a final judgment.

It is so ORDERED.

It is further ORDERED that Plaintiff is GRANTED Leave to File a motion for request of damages and attorney's fees within ten (10) days of entry of these findings.

The surety bond previously posted by Plaintiff on June 27, 1986 is released.